UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| HERSHEL MCCALEB, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:17-011-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| R. JACKSON, et al., | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Hershel McCaleb is a prisoner who was recently confined at the Federal Correctional Institution (FCI) in Manchester, Kentucky. Proceeding without an attorney, McCaleb filed a civil rights action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), alleging that the defendants violated his constitutional rights. [R. 1.] McCaleb is suing the defendants in their official and individual capacities and he claims that they displayed deliberate indifference to his serious medical needs in violation of the Eighth Amendment. [*Id.* at 6.] McCaleb also claims that the defendants engaged in medical malpractice. [*Id.*] The defendants filed a motion to dismiss McCaleb's complaint or, in the alternative, a motion for summary judgment. [R. 18.] For the reasons set forth below, the Court will grant the defendants' motion.

**I**

McCaleb alleges that he injured his back while lifting weights. [R. 1 at 2.] Therefore, on May 22, 2015, he reported to the prison's Health Services Department and complained of lower back pain and also claimed that his kidneys were failing. [R. 18-4 at 14.] Registered Nurse (RN) R. Jackson provided McCaleb with care and performed a urinalysis, which showed that McCaleb had a trace amount of blood in his urine. [*Id.*] As a result, RN Jackson directed

McCaleb to take nonsteroidal anti-inflammatory drugs, drink fluids, rest, and return to Health Services within days. [*Id.*]

The next day, McCaleb returned to Health Services complaining of back pain. [*Id.* at 16.] RN Casey Gibbs reviewed McCaleb's history and checked his temperature, pulse, respiratory rate, blood pressure, blood glucose level, and oxygen saturation level. [*Id.* at 16-17.] RN Gibbs also examined McCaleb's general appearance, skin, and eyes, as well as his various systems, including but not limited to his cardiovascular and musculoskeletal systems. [*Id.* at 17.] RN Gibbs then relayed McCaleb's complaints and the assessment findings to the Physician Assistant (PA) on call. [*Id.* at 18.] As a result, the PA ordered McCaleb ibuprofen and instructed him to take 800 milligrams three times per day for three days and "follow up at the next sick call." [*Id.* at 18-19.] McCaleb was also placed on a six-week recreation restriction and issued a wheelchair until he could be further evaluated. [*Id.* at 18.]

Less than three days later, on the morning of May 26, 2015, McCaleb returned to Health Services complaining once again of back pain. [*Id.* at 22.] PA Matthew Webb provided McCaleb with care, checking his temperature, pulse, respiratory rate, blood pressure, and oxygen saturation level. [*Id.* at 22-23.] PA Webb then examined McCaleb's general appearance, skin, and head, as well as his cardiovascular and musculoskeletal systems. [*Id.* at 23.] PA Webb also conducted certain range of motion tests and specifically noted that McCaleb had "marked tenderness." [*Id.*.] PA Webb then prescribed McCaleb a ketorolac injection, as well as prednisone for his back pain and sciatica. [*Id.* at 24.] PA Webb also renewed McCaleb's ibuprofen order, and directed him to take one tablet by mouth three times per day. [*Id.* at 25.] Finally, PA Webb ordered radiology tests of McCaleb's spine and lumbar region and directed McCaleb to perform range of motion exercises using warm compresses and return to Health Services if his condition did not improve. [*Id.* at 25.]

Two days later, on May 28, 2015, PA Webb reviewed McCaleb's radiology report, which was "negative except for mild degenerative joint disease." [*Id.* at 27.] Then, on May 29, 2015, PA Webb provided McCaleb with more care and performed a new urinalysis, which revealed a trace of blood. [*Id.* at 28-29.] PA Webb also ordered a radiology test of McCaleb's abdomen in order to rule out kidney stones, requested that McCaleb have an offsite CT scan of his lower back, and once again prescribed ibuprofen and prednisone. [*Id.* at 29-30.] Finally, PA Webb directed McCaleb to return to Health Services immediately if his conditioned worsened. [*Id.* at 30.]

The next day, on May 30, 2015, McCaleb returned to Health Services and complained of severe back pain. [*Id.* at 32.] McCaleb also indicated that, among other things, "he had lost control of his bladder and was not able to feel when he needed to go to the bathroom." [*Id.*.] RN Gibbs provided McCaleb with care by once again assessing his vital signs and examining his various systems. [*Id.* at 32-35.] RN Gibbs also consulted with another medical professional and, together, they decided to promptly send McCaleb to an outside emergency room for further evaluation. [*Id.* at 34-35.] Therefore, that same day, prison officials transported McCaleb to Baptist Health Hospital in Corbin, Kentucky, where medical professionals conducted further tests and provided McCaleb with more medical care. [*Id.* at 34-50.] McCaleb was then transferred to the University of Kentucky Medical Center (UKMC) in Lexington, Kentucky, where he was diagnosed with Cauda-Equina Syndrome, a serious neurological condition, and scheduled for surgery. [*Id.* at 5, 52.]

On May 31, 2015, neurologists at UKMC performed a surgery on McCaleb known as a "L3-4 laminectomy and discectomy." [*Id.* at 55-57.] McCaleb then spent the next several weeks at UKMC recovering and receiving physical therapy and additional treatment. [*Id.* at 57-194.] Eventually, on June 26, 2015, McCaleb was discharged from UKMC and sent to the Federal

Medical Center, a prison located in Lexington, Kentucky that specializes in providing inmates with medical care. [*Id.* at 7.]

McCaleb, however, was not satisfied with the medical care he received from officials at FCI-Manchester. McCaleb therefore pursued administrative remedies with the Bureau of Prisons. However, McCaleb's requests for relief were denied and, as a result, he filed this lawsuit. [R. 1 at 6-7.] McCaleb specifically named four defendants in his complaint—RN Jackson, RN Gibbs, PA Webb, and Health Services Administrator (HSA) A. Wilson—and then indicated that he also wanted to sue other "unknown" or "unnamed" officers and staff. [*Id.* at 1-2.] Ultimately, McCaleb claims that the defendants displayed deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution and also engaged in medical malpractice. [*Id.* at 6.] McCaleb is seeking $9 million in monetary damages. [*Id.* at 10.]

The Court conducted an initial screening of McCaleb's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and directed that the complaint and a summons be served on each of the four named defendants. [R. 9.] Defendants filed a motion to dismiss McCaleb's complaint or, in the alternative, a motion for summary judgment, which is the subject of this Order. [R. 18.]

**II**

As an initial procedural matter, the Court notes that while McCaleb only named four defendants in his complaint, the docket sheet in this case also lists three additional defendants—(1) "John Does, *Other unknown officers and staff in their individual and official capacities*," (2) "Mr. Saunders, *Physical Therapy*," and (3) "Ms. Elderd, *Physician's Assistant*." The reference to "John Doe" defendants relates to McCaleb's statements in his complaint that he wanted to sue other "unknown" or "unnamed" officers and staff. [R. 1 at 1-2.] McCaleb, however, has not

provided any information regarding the identity of or service address for these "John Doe" defendants. Therefore, the Court will dismiss the claims against them without prejudice.

The docket sheet entries for "Mr. Saunders, *Physical Therapy*," and "Ms. Elderd, *Physician's Assistant*" are based on the fact that McCaleb filed a separate, handwritten document into the record that was titled "Supplement Beirf [sic]" and lists these individuals as defendants. [R. 1-3.] That document, however, appears to be styled as a separate civil action and refers to factual allegations that are entirely distinct from those set forth in McCaleb's complaint. Thus, Saunders and Elderd are not defendants in this action and, as a result, the Court will direct the Clerk of the Court to terminate these individuals as defendants on the docket sheet. McCaleb may certainly pursue a separate civil action against these individuals, as it appears he originally intended, but he must file a complaint with the Court using a court-approved form. McCaleb must also present legal arguments in support of his claims, identify the relief he is seeking against these individuals, and sign his complaint—none of which he did in his submission docketed at R. 1-3.

Turning then to the four named defendants' pending motion [R. 18], the Court will treat that motion as one for summary judgment because the defendants have attached and relied upon documents and declarations extrinsic to the pleadings. *See* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). Ultimately, the Court will grant the defendants' motion because McCaleb's claims are unavailing.

McCaleb's claims against the defendants in their official capacities are barred by sovereign immunity. The United States as a sovereign is generally immune from suit, *United States v. Sherwood*, 312 U.S. 584, 586 (1941), and this immunity extends to claims against government agents acting in their official capacities. *Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002). While the United States can expressly waive its immunity, it has not done so in

*Bivens* actions. *Nuclear Transport & Storage, Inc. v. United States*, 890 F.2d 1348, 1351-52 (6th Cir. 1989). Therefore, McCaleb's claims against the defendants in their official capacities are barred.

McCaleb's Eighth Amendment claims against RN Jackson, RN Gibbs, PA Webb, and HSA Wilson in their individual capacities are without merit. Under certain circumstances, a prisoner can establish an Eighth Amendment violation if he is provided inadequate medical care. However, the plaintiff must show that the defendant acted with deliberate indifference to the plaintiff's serious medical needs. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Here, even construing all of the evidence in the light most favorable to McCaleb and assuming that his medical needs are serious, he cannot establish that RN Jackson, RN Gibbs, and PA Webb violated his Eighth Amendment rights. After all, the evidence clearly shows that these defendants were extensively involved in caring for McCaleb. *See supra* Part I. As the Court previously discussed at length, RN Jackson, RN Gibbs, and PA Webb each provided McCaleb with care by examining him, performing tests, and providing him medications and directions for how to treat his pain. *See id.* In fact, in the eight-day period from May 22, 2015, to May 30, 2015, each of these defendants treated McCaleb and collectively they did so on at least five different occasions. *See id.* This was not deliberate indifference. Instead, it is clear that McCaleb's real dispute is over the adequacy of the treatment he received. The Sixth Circuit, however, has recognized that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Similarly, the Sixth Circuit has

6

repeatedly recognized that a mere disagreement over medical treatment does not give rise to a constitutional claim of deliberate indifference. *See, e.g., Wright v. Sapp*, 59 F. App'x 799, 801 (6th Cir. 2003); *Simpson v. Ameji*, 57 F. App'x 238, 239 (6th Cir. 2003). Thus, McCaleb's Eighth Amendment claims against RN Jackson, RN Gibbs, and PA Webb are unavailing.

There is also no merit to McCaleb's Eighth Amendment claim against HSA Wilson. McCaleb alleges in his complaint that, on May 23, 2015 and May 26, 2015, HSA Wilson refused to send him to the hospital. [R. 1 at 2-4.] However, even if that was true, there does not appear to be any evidence in the record indicating that the medical professionals at the prison requested that McCaleb be sent to the hospital before May 30, 2015. In other words, McCaleb has not demonstrated that HSA Wilson interfered with the decisions made by the prison's medical team or that she otherwise acted with the culpable state of mind necessary to support his Eighth Amendment claim. *See Lara-Portele v. Stine*, No. 6:07-cv-014, 2008 WL 45398, at *6 (E.D. Ky. 2008) (citing *Estelle*, 429 U.S. at 104).

Finally, while McCaleb has not stated viable claims under the Eighth Amendment, the Court reaches no conclusion as to his state law medical malpractice claims. Instead, the Court simply declines to exercise supplemental jurisdiction over these claims because the Court is dismissing McCaleb's Eighth Amendment claims. Further, the balance of judicial economy, convenience, fairness, and comity all point toward declining jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3).

## III

In light of the foregoing analysis, it is hereby **ORDERED** as follows:

1. McCaleb's claims against the "John Doe" defendants are **DISMISSED WITHOUT PREJUDICE**;

2. The Clerk of the Court **SHALL** terminate "Mr. Saunders, *Physical Therapy*" and "Ms. Elderd, *Physician's Assistant*" as defendants on the docket sheet;

3. The defendants' motion for summary judgment [R. 18] is **GRANTED** in part;

4. Judgment will be entered contemporaneously in favor of defendants Jackson, Gibbs, Webb, and Wilson with respect to all of McCaleb's claims, except for his state law medical malpractice claims;

5. McCaleb's state law medical malpractice claims are **DISMISSED WITHOUT PREJUDICE**;

6. Any and all other pending motions in this case are **DENIED AS MOOT**; and

7. This action is **STRICKEN** from the Court's active docket,

This the 9th day of February, 2018.

Gregory F. Van Tatenhove
United States District Judge